## 65578. FRASER v. CITIZENS & SOUTHERN BANK OF FULTON COUNTY.

CARLEY, Judge.

In July of 1976, appellant purchased a house from the appellee. Running across the front of the lot was a stream which passed under the driveway through two culverts. Because the culverts were inadequate to handle the stream's flow during heavy rains, the property was subject to flooding. The contract of sale contained the following express warranty by appellee: "Seller warrants that he has no knowledge of *the house on lot 42 flooding* due to rising waters in the creek which is on this property." (Emphasis supplied.) Approximately a year prior to the closing, however, one of appellee's officers had received a letter from the County Development Department informing him that the existing culverts under the driveway were insufficient "to by-pass storm flow under the 100-year storm conditions for this sub-basin" and recommending that the culverts be replaced by a construction that would allow a greater flow. In July of 1977, approximately a year after the sale of the property to appellant, a contract was entered into whereby appellee agreed to make certain repairs and pay certain expenses in connection with the property and appellant agreed in turn that appellee would "have no further liability as to this home through any other documents or agreements verbal or written as [appellee] will have satisfied all claims and warranties that exist or might exist now or hereafter." In August of 1979, flood waters from the stream reached the house itself, causing damage to the structure.

Appellant then instituted suit against appellee to recover damages, alleging fraud and breach of the express warranty contained in the contract for sale of the property. By amendment, appellant further asserted that appellee had breached a provision of the 1977 agreement. The appellee subsequently moved for and was granted summary judgment as to the fraud and breach of warranty counts. It is from this order that appellant brings the instant appeal.

1. With regard to the breach of express warranty count, the trial court found that the appellee had effectively negated the allegation that it knew at the time of the closing that the house itself, as opposed merely to the property in front of the house, was subject to flooding. Our review of the record demonstrates that appellant offered no evidence which controverts the appellee's sworn denials that it was aware of such flooding of the house. Indeed, appellant has offered no evidence which would indicate that any such flooding of the house had ever in fact occurred prior to the sale. Consequently, the grant of summary judgment as to this count must be affirmed.

2. We turn to the issue of whether summary judgment was properly granted as to the fraud count. "[I]n cases of passive concealment by the seller of defective realty, [there is] an exception to the rule of caveat emptor ... That exception places upon the seller a duty to disclose in situations where he or she has special knowledge not apparent to the buyer and is aware that the buyer is acting under a misapprehension as to facts which would be important to the buyer and would probably affect [his] decision. [Cits.]" *Wilhite v. Mays,* 140 Ga. App. 816, 818 (232 SE2d 141) (1976), aff'd 239 Ga. 31 (235 SE2d 532) (1977). See also *P. B. R. Enterprises v. Perren,* 243 Ga. 280 (4) (253 SE2d 765) (1979). Even assuming without deciding that appellee had "special knowledge" of the propensity of the stream to flood the property, as evidenced for example by the warnings it had received from the County Development Department, and that it was fraudulent for appellee to fail to disclose that "special knowledge" to appellant as a prospective purchaser, on the record before us it is clear that the agreement of 1977 was an accord and satisfaction as to that fraud claim. "Parties may settle frauds as well as anything else, if they act with knowledge of the facts; and such a settlement is as effectual when made by the parties, as when made by a court." *Ham v. Hamilton,* 29 Ga. 40, 42 (1859). See also *Montgomery v. Morris,* 32 Ga. 173 (3) (1861). "Even a fraud may be compromised, provided the party had knowledge of its existence, and entered into the agreement to have his rights springing from or growing out of it settled." *Collins v. Collins,* 165 Ga. 198 (4) (140 SE 501) (1927).

From a review of the record, it is clear that, at the time of the execution of the agreement of 1977, appellant's knowledge of all circumstances relating, in any way, to his later asserted fraud claim was at least equal to — if not superior to — the knowledge of appellee. During his deposition, appellant stated that during 1976, "[t]here was continual backing up of water to some degree from the time we would have heavy rains." Further, in the deposition of appellant, the following question was propounded:" ... I simply want to confirm the fact, though, that at the time of July 8, 1977 ..., you were well aware at least that your lot was flooding at this time? This is more than a year after you bought the house." To this question appellant responded, "yes." In view of the undisputed evidence that at the time of signing the agreement in July of 1977 appellant was obviously well aware that the property was subject to flooding, the agreement must be construed to be an all inclusive "settlement" of appellant's claim regarding appellee's conduct in the sale of the house, including that premised upon appellee's failure to disclose that the property was subject to such flooding. See generally *West v. Haupt,* 163 Ga. App.

907, 909 (1) (296 SE2d 723) (1982). The trial court did not err in granting appellee summary judgment as to the fraud count.

*Judgment affirmed. Shulman, C. J., Deen, P. J., Birdsong and Sognier, JJ., concur. Quillian, P. J., McMurray, P. J., Banke and Pope, JJ., dissent.*

DECIDED JUNE 6, 1983 —

*Wade K. Copeland, Michael T. Thornton,* for appellant.
*Franklin R. Nix,* for appellee.

BANKE, Judge, dissenting.

I dissent to the majority's conclusion in Division 2 that the 1977 agreement must be construed as "an all inclusive 'settlement' of appellant's claim regarding appellee's conduct in the sale of the house, including that premised upon appellee's failure to disclose that the property was subject to . . . flooding."

In order to create an accord and satisfaction, there must be a meeting of the minds as to the subject matter embraced in the agreement, and where there is no intention to settle or adjust a particular claim, the plaintiff is not estopped from later asserting it merely because the agreement recites that it is in full settlement of all claims between the parties. *State Farm Fire & Cas. Co. v. Fordham,* 148 Ga. App. 48 (2) (250 SE2d 843) (1978); *First Nat. Bk. of Gainesville v. Appalachian Ind.,* 146 Ga. App. 630 (4) (247 SE2d 422) (1978); OCGA §§ 13-4-101 et seq. (Code Ann. §§ 20-1201 et seq.)

While the appellant has admitted that at the time he signed the 1977 agreement he knew the stream was subject to overflowing its banks during periods of heavy rain, he denies any knowledge that the house itself was threatened. The distinction is, to me, an important one, for the occasional inundation of a portion of the land may have been perceived by him as quite harmless, whereas the flooding of the house itself obviously was not.

Had the appellant known of the contents of the appellee's letter from the County Development Department prior to his purchase of the property in 1976, the information might or might not have influenced his decision to go through with the transaction. This question clearly cannot be resolved as a matter of law on the basis of the record before us, and thus the appellee has not negated the existence of a fraud claim under *Wilhite v. Mays,* supra, and *P. B. R. Enterprises, Inc. v. Perren,* supra. I do not believe we can determine the intentions of the parties in signing the 1977 agreement as a matter

of law, either, and thus I do not believe the appellee has conclusively established an accord and satisfaction defense based on that agreement. For these reasons, I would reverse the grant of summary judgment and allow the case to proceed to trial on these issues.

I am authorized to state that Presiding Judge Quillian, Presiding Judge McMurray, and Judge Pope join in this dissent.